[Cite as *State v. Jackson*, 2024-Ohio-1880.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230446 |
| | | TRIAL NO. B-2000335 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| LARRY JACKSON, JR., | : | |
| Defendant-Appellee. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: May 17, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Elizabeth Miller,* Ohio Public Defender, and *Peter Galyardt,* Assistant State Public Defender, for Defendant-Appellee.

**BOCK, Presiding Judge**.

**{¶1}** Plaintiff-appellant state of Ohio appeals the common pleas court's judgment granting defendant-appellee Larry Jackson's R.C. 2953.21 petition for postconviction relief and ordering a new trial. Because there was competent, credible evidence to support the lower court's determination that Jackson's trial counsel had rendered ineffective assistance with respect to Jackson's motion to suppress his confession, we affirm the court's judgment.

## Background

**{¶2}** In 2021, following a bench trial, Jackson was convicted of four counts of rape of a child under the age of ten and sentenced to 15 years to life for each count, to be served concurrently. The victim was Jackson's younger cousin.

**{¶3}** Initially, when Jackson learned he was a suspect in these crimes, he voluntarily went to the police station to "clear his name." He was interviewed by two police officers, including Detective Aaron Roach, for a little over an hour. Roach read the *Miranda* warnings to Jackson[1] and asked him if he understood his rights. Jackson responded, "Well, it means I have the right to talk, but if I had a lawyer present, it'd be – I don't know. I really never –." Detective Roach then said, "[I]f you want to talk to me, you can talk to me. If you want to stop talking to me – you can stop talking to me." Jackson then signed the waiver-of-rights form and the interview proceeded. Jackson adamantly denied raping the victim during this interview. Believing Jackson was not being truthful, Roach suggested he take a polygraph test. Then, after the polygraph test and an hours-long interrogation by another officer, Detective Edwin Riveria,

---

[1] Detective Roach said to Jackson, "You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during your questioning. If you cannot afford a lawyer, one will be appointed for you before any questions, if you wish. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."

Jackson confessed to one act of oral sex, but maintained that he did not have vaginal intercourse with the victim.

{¶4}   Prior to trial, Jackson moved to suppress his confession, arguing that he did not waive his *Miranda* rights and that his confession was involuntary. He also sought an order preventing the state from referencing the fact that he took a polygraph test and the result of that test. The trial court granted Jackson's request with respect to the polygraph test, but denied his request to suppress his confession, determining that he had knowingly waived his *Miranda* rights and his confession had not been coerced by police.

{¶5}   In finding Jackson guilty of the charged offenses, the trial court noted that the victim's testimony was credible (her trial testimony was consistent with statements she had made to the social worker during her Mayerson Center interview) and that Jackson's testimony at trial—denying raping the victim—was not credible given his confession.

{¶6}   This court affirmed Jackson's convictions and sentence on direct appeal, holding that Jackson's confession had not been coerced and was voluntary and that Jackson's waiver of his *Miranda* rights was valid. *State v. Jackson*, 1st Dist. Hamilton No. C-210466, 2022-Ohio-2562.

### Postconviction Proceedings

{¶7}   In his timely-filed petition, Jackson set forth one ground for relief, arguing that his trial counsel was constitutionally ineffective with respect to presenting Jackson's motion to suppress his confession.  Specifically, Jackson argues that trial counsel rendered ineffective assistance of counsel by failing to investigate and present evidence of Jackson's intellectual disabilities (either through a psychological assessment or school records), argue that his disabilities did not allow him to waive his *Miranda* rights knowingly, intelligently, and voluntarily, and present evidence to

3

establish the coercive nature of the "Reid Technique" in interrogating suspects with intellectual disabilities.

{¶8}     In support of his claim, Jackson submitted the following evidence:  his school records showing his intelligence quotient ("IQ") and intellectual disabilities; the affidavit and report of Dr. Naeem Khan, a clinical psychologist who evaluated Jackson and opined that Jackson's low-to-borderline range of intellectual functioning prevented him from understanding his *Miranda* rights and the consequences of giving up those rights; and a law review article that analyzed research demonstrating the heightened risk for individuals with an intellectual disability to be wrongfully convicted, particularly due to the risk of false confessions.

{¶9}     Dr. Khan's report indicated that at Jackson's then-current age of 31, his IQ was 77, only two points higher than his IQ in high school. In high school, Jackson had an Individualized Education Plan, which mandated that he be provided with "assistive tools" to help him succeed in school, including a study-skills class, an altered grading scale, and extended time to take tests. Dr. Khan's report also indicated that Jackson had scored in the "below average range" on the KBIT-2IQ, which tested Jackson's verbal and nonverbal abilities, and that he had scored "mild to borderline" in intellectual capacity on the sections of the Wechsler Adult Intelligence Test evaluating Jackson's verbal-comprehension and perceptional-reasoning ability.

{¶10}  The trial court held an evidentiary hearing on Jackson's petition, at which Detective Roach, Detective Riveria, and Dr. Khan testified.  At the hearing, the state stipulated that Dr. Khan was an expert in the field of clinical psychology.

{¶11}  Detective Roach testified that he had read the *Miranda* warnings to Jackson before his initial interview and asked Jackson if he had understood them. Roach interpreted Jackson's answer as just "processing out loud," and determined that Jackson was not confused about his rights, and, in his opinion, understood his rights. Roach explained that he had suggested Jackson take a polygraph test because he had

believed Jackson was being deceptive during the interview. On cross-examination, Roach testified that he does not normally delve into a suspect's educational background except to ask if he can read and write and how far he went in school. During the interview, he had learned that Jackson had graduated from high school. Finally, he maintained that based on his significant experience interviewing suspects, simply because a suspect is inarticulate in answering a question does not mean that the suspect did not understand the question.

{¶12} Detective Riveria testified that before he administered the polygraph test, he did not reread the *Miranda* rights to Jackson but confirmed with Jackson that Detective Roach had reviewed the *Miranda* rights with him and then informed Jackson that those rights were still in effect. Riveria testified that he had administered the polygraph test to Jackson and Jackson had failed. He explained that he would have stopped the polygraph test if he had thought Jackson did not understand his questions. After the test, he continued to question Jackson for two hours, testifying that he had heard of the "Reid Technique" of interrogation and had some prior training in it, but he does not use it when questioning suspects. Riveria testified that Jackson used complete sentences when confessing and explained that in his opinion, as an experienced police officer, Jackson's verbal comprehension was suitable.

{¶13} Dr. Khan testified that when he had written his report, opining that Jackson's low intellectual functioning prevented him from knowingly waiving his *Miranda* rights, he had not yet viewed the video recordings and transcripts of the polygraph test and Jackson's two interviews with police officers. But he testified that since then he has reviewed the video recordings and transcripts, and his opinion has not changed. He explained that he had evaluated Jackson, administering several tests measuring his intellectual capacity, and interacted with him for approximately five hours. He testified that these tests demonstrated that Jackson had a borderline intellectual disability with respect to verbal comprehension and perceptual reasoning.

5

Dr. Khan testified that, in his expert opinion, based on these scores and his personal evaluation of Jackson, Jackson could not have intelligently or knowingly waived his *Miranda* rights because he could not understand or comprehend the consequences of waiving those rights.

{¶14} Dr. Khan also testified that Jackson had not voluntarily confessed to the crimes. Based on his low IQ, Dr. Khan explained that Detective Riveria's intense questioning, which included sitting very close to Jackson and occurred while Jackson was still connected to the polygraph instrument, overwhelmed Jackson, and Jackson, in Dr. Khan's opinion, was ultimately just "acquiescing" to Riveria in the interview.

{¶15} After the evidentiary hearing, a review of the petition, and the trial record, the common pleas court, which was the same court that had presided over Jackson's trial, granted Jackson's petition for postconviction relief, and ordered a new trial. In its decision, the common pleas court noted that trial counsel had unreasonably failed to raise the issue of Jackson's intellectual deficits and argue that it impacted Jackson's ability to competently waive his *Miranda* rights and give a voluntary confession, and the fact that this was not considered by the trial court when analyzing the motion to suppress the confession prejudiced Jackson.

{¶16} The state now appeals, contending in a single assignment of error that the common pleas court abused its discretion by finding that trial counsel was "ineffective by not specifically including 'competency to waive Miranda' in a motion to suppress."

**Analysis**

{¶17} A trial court's decision granting or denying a R.C. 2953.21 petition for postconviction relief should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58.

**{¶18}** To prove ineffective assistance of counsel, a postconviction petitioner must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To establish prejudice, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

**{¶19}** The state does not challenge the trial court's finding that Jackson was prejudiced by his attorney's deficient performance, and we therefore do not address that prong of the *Strickland* standard. Instead, the state challenges only the deficient-performance prong of *Strickland,* maintaining that the common pleas court placed too much weight on Dr. Khan's report, where he had opined that Jackson's intellectual disabilities prevented him from understanding or comprehending the consequences of waiving his *Miranda* rights, to determine that trial counsel was deficient in failing to argue Jackson's competency to waive his *Miranda* rights in the motion to suppress. The state points out that when Dr. Khan first reached his conclusion as to Jackson's ability to understand his *Miranda* rights, Dr. Khan had not reviewed the video recordings or transcripts of Jackson's two police interviews. Therefore, the state contends that Dr. Khan's expert opinion, as set forth in his report, should not be given much weight as it relied primarily on "test scores" to determine whether Jackson understood his rights. We are unpersuaded.

**{¶20}** Dr. Khan spent more than five hours with Jackson, administering tests and interacting with him before he wrote his report. Further, at the evidentiary hearing on Jackson's petition, Dr. Khan testified that he had viewed the video recordings and transcripts of the police interviews before the hearing and that his

opinion as to whether Jackson was able to understand or comprehend his rights and the consequences for waiving those rights remained unchanged. In fact, he testified that the video recordings were further support for his opinion that Jackson did not understand the rights he was waiving. Dr. Khan opined, after viewing the video recording of the polygraph test and interview by Detective Riveria, that Jackson, having an intellectual disability, had been overwhelmed by Detective Riveria's intense questioning and thus was just "acquiescing" to Riveria in the interview. Given Dr. Khan's expertise, and his testimony at the evidentiary hearing, we cannot say that the court erred by relying on Dr. Khan's opinion as set forth in his report to determine that trial counsel's performance was deficient by failing to argue Jackson's competency to waive his *Miranda* rights in the motion to suppress.

{¶21} Concluding that there was competent, credible evidence to support the trial court's determination that trial counsel's performance fell below an objective standard of reasonableness and considering that the state has raised no challenge to the court's finding that counsel's deficient performance prejudiced Jackson, we hold that the trial court did not abuse its discretion in granting Jackson's petition for postconviction relief and ordering a new trial. Accordingly, we overrule the single assignment of error and affirm the common pleas court's judgment.

Judgment affirmed.

**KINSLEY, J.**, concurs.

**WINKLER, J.**, concurs in part and dissents in part.

**WINKLER, J.**, concurring in part and dissenting in part.

{¶22} To prove an ineffective-assistance claim, the defendant must demonstrate both that "counsel's performance was deficient," and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. Because I agree with the majority that there was competent, credible evidence to support the lower court's finding of deficient performance, I concur in

part. However, I respectfully dissent in part because the common pleas court must properly decide both prongs of the *Strickland* test prior to determining that trial counsel provided constitutionally ineffective assistance of counsel, and the lower court did not do that here. Accordingly, I would reverse the judgment of the lower court granting postconviction relief and remand the matter for the court to properly consider the prejudice prong of *Strickland*.

{¶23} To prove prejudice in this case, Jackson had to "demonstrate a 'reasonable probability' that without the deficient performance, the trier of fact would have a reasonable doubt concerning [Jackson's] guilt [or, in other words, that the outcome of the trial would have been different]. Generally, there is no prejudice where 'compelling evidence' remains to support the conviction assuming the suppression motion would have been granted." (Citations omitted.) *State v. White*, 1st Dist. Hamilton No. C-150250, 2016-Ohio-3329, ¶ 54.

{¶24} Here, under the prejudice prong of *Strickland*, the common pleas court had to consider whether, if Jackson's confession was suppressed, any compelling evidence remained to support Jackson's convictions. In this case, the remaining evidence is the victim's testimony that Jackson raped her four times. The common pleas court failed to consider this evidence or even discuss whether the outcome of the trial would have been different if the confession had been suppressed. Because the common pleas court failed to apply the correct test in considering the prejudice prong of *Strickland*, and because a lower court never has discretion to misapply the law or commit an error of law, *see Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, I would reverse the judgment of the lower court and remand the matter for the court to apply the proper analysis and determine whether, if Jackson's confession had been suppressed, there is a reasonable probability that the result of Jackson's trial would have been different; i.e., would there be reasonable doubt as to his guilt in light of the remaining evidence.

**{¶25}** Accordingly, I respectfully concur in part and dissent in part.

Please note:

The court has recorded its own entry on the date of the release of this opinion.